*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 14, 2023

Plaintiff-Appellee,

v

No. 358580
Presque Isle Circuit Court
LC No. 20-093153-FC

DARYL WILLIAM MARTIN,

Defendant-Appellant.

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

PER CURIAM.

A jury convicted Daryl William Martin of one count each of first and second-degree criminal sexual conduct (CSC) for sexually assaulting the five-year-old stepdaughter, KE, of his stepson, CM. Martin raises several challenges to his convictions. Although the court erroneously admitted the testimony of one other-acts witness, that error was ultimately harmless. We affirm.

## I. BACKGROUND

In 2019, KE reported that her "grandfather," Daryl Martin, had touched her vaginal area on more than one occasion while they were playing games in her home. Before trial, the court approved the use of a witness screen and a support person to ease KE's fears while testifying. Even so, KE (who was then eight years old) denied at trial that Martin had "ever give[n] [her] any bad touches," touched her private body parts, or did "anything with [her] clothing." The prosecutor attempted to steer KE back to allegations she had made in the past to no avail. The court excused KE from the stand and excused the jury.

The prosecutor initially expressed that he would have to dismiss the charges against Martin. After giving the matter a second thought, however, the prosecutor agreed with the trial court that a brief recess could be held to allow him to attempt to reassure KE. The recess lasted only four minutes. When KE returned to the stand, she testified that when she was five years old, Martin came into her bedroom where she was lying on the bed. KE described that Martin pulled down her pants and touched her vagina with his hand. The prosecutor asked if Martin had ever touched KE's private areas with any other part of his body and KE responded, "No." Over defense counsel's objection, the court allowed the prosecutor to ask whether Martin had ever touched KE's

privates with his mouth or tongue. KE replied that she was laying down with her head in the bathtub and Martin "was licking [her] privates."

Before trial, the prosecutor notified the defense of his intent to present evidence under MCL 768.27a that Martin had sexually abused three other young female relatives. The court denied Martin's motion to exclude this evidence. JH testified that Martin was her uncle through marriage. She spent a significant amount of time with Martin and his family as a child and viewed Martin as a father figure. In 1994, when JH was 14 years old, she spent the night at Martin's home. In the middle of the night, while JH slept next to another family member, Martin snuck into the room and digitally penetrated JH's vagina for 10 to 25 minutes.

JM is Martin's daughter. She described that after her parents divorced, Martin began making "lewd comments" toward her and slapping her buttocks. On one occasion, Martin pulled down the front of JM's pants and told her that she "had a mound like [her] mom's." He advised JM to shave it. On another occasion, Martin forced JM to hide in the bathroom and watch as her stepmother performed fellatio on him in the neighboring bedroom. JM described that Martin "would touch down [her] pants," but never penetrated her. The abuse lasted from the age of eight until 15, or until about 2011. Despite this abuse, JM did not cease contact with her father until 2013, because she wanted to be present to protect her younger half-brother from physical abuse at Martin's hands.

MM is CM's daughter and Martin is her step-grandfather. She described that in approximately 2010, when she was five or six years old, she visited Martin's home with other family members. While MM laid on Martin's bed to take a nap, Martin entered, pulled down her pants, and digitally penetrated her vagina.

Megan Koss, a behavioral health therapist, testified that KE's mother brought her for therapy at the recommendation of her pediatrician. Koss saw KE four times, most recently one week before the trial. Over defense counsel's objections, the court allowed Koss to testify under the hearsay exception of MRE 803(4) that KE suffered from nightmares and was afraid that Martin would escape from jail and assault her again. KE reported nighttime fears that her stuffed animals would perpetrate sexual acts against her. When asked, Koss testified that KE told her that Martin "performed oral sex to her while she was made to watch pornography." Koss further testified that KE suffered symptoms consistent with post-traumatic stress disorder (PTSD), including nightmares, difficulty concentrating, difficulty following directions, hypervigilance, and jumpiness.

Leah Arnold is a licensed clinical social worker in KE's school district. Arnold testified that during a March 2020 meeting, KE "had disclosed that she was told by family that she was allowed to keep secrets from me, that she wasn't supposed to tell me certain things, and - - and one of the things was that her Grandpa Daryl had touched her in her genital area."

Kellie Sefernick conducted KE's forensic interview. During the interview, KE "deflected a lot in terms of wanting to leave the room" and seemed "reluctant to . . . get into the meat of why" she was being interviewed. Sefernick described that this was common for a child sexual abuse victim. On cross-examination, Sefernick testified that KE did not disclose that Martin had

performed oral sex on her, but had made disclosures Sefernick "characterized as a sexual trauma or sexual event."

Presque Isle County Sheriff's Detective Joseph Mulka interviewed Martin during the investigation. When confronted with KE's allegations against him, Martin responded "like two times in a row" "that he's almost 100 percent positive that he didn't do that."

The defense presented evidence regarding the investigation into MM's uncharged accusations against Martin, including that her statements during her forensic interview were inconsistent with her trial testimony. CM testified that he did not believe Martin had sexually abused KE or MM, and that KE did not appear to be afraid of Martin when they encountered him in town. However, CM admitted that KE had been nervous to testify and had experienced difficulty the night after appearing in court.

The jury convicted Martin as charged. The court sentenced Martin to 25 to 40 years' imprisonment for CSC-I, consistent with the statutory mandatory minimum. The court exceeded the guidelines and sentenced Martin to 10 to 15 years' imprisonment for the CSC-II conviction. The judgment of sentence further indicated that Martin would be "subject to lifetime monitoring under MCL 750.520n."

Martin thereafter filed a motion for a new trial and to correct his sentence. Martin contended that JM's testimony regarding alleged physical abuse of his son was a prior bad act presented without notice and that was inadmissible and irrelevant under MRE 404(b). Martin further contended that the lifetime electronic monitoring provision of his sentence was cruel and/or unusual punishment and an unreasonable search.[1] The court denied Martin's motion. He now appeals.

## II. RECESS DURING KE'S TESTIMONY

Martin contends that the trial court abused its discretion in denying the prosecution's motion for *nolle prosequi* and pierced the veil of judicial impartiality by allowing a recess to rehabilitate KE's testimony.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). "[I]t is within the prosecution's discretion to proceed to trial or to dismiss a case. Unless the prosecution acts in a manner that is unconstitutional, illegal, or ultra vires, the prosecution's decision to proceed to trial or dismiss the case is exempt from judicial review

---

[1] Martin continues to challenge the constitutionality of MCL 768.27a on appeal. This Court rejected these exact challenges in *People v Hallak*, 310 Mich App 555, 566-581; 873 NW2d 811 (2015), rev'd in part on other grounds *People v Hallak*, 499 Mich 879; 876 NW2d 523 (2016). When the Supreme Court reversed this Court's decision in part in *Hallak*, it left untouched the LEM analysis. We are bound by this Court's prior published decision in this regard. MCR 7.215(C)(2).

-3-

pursuant to the separation of powers doctrine." *People v Jones*, 252 Mich App 1, 10; 650 NW2d 717 (2002).

A prosecutor may withdraw charges levied against a defendant when trial has started by seeking *nolle prosequi*.

> "*Nolle prosequi*" is defined as "[a] legal notice that a lawsuit or prosecution has been abandoned" or "[a] docket entry showing that the plaintiff or the prosecution has abandoned the action." *Black's Law Dictionary* (10th ed). In Michigan, *nolle prosequi* usually constitutes "a dismissal without prejudice which does not preclude initiation of a subsequent prosecution." *People v Reagan*, 395 Mich 306, 317; 235 NW2d 581 (1975); *People v McCartney*, 72 Mich App 580, 585; 250 NW2d 135 (1976). See also MCL 767.29 (setting forth requirements for entering a nolle prosequi upon an indictment in Michigan). [*People v Guthrie*, 317 Mich App 381, 384 n 3; 894 NW2d 711 (2016).]

Before a prosecutor may enter a *nolle prosequi*, he or she must make a record as provided in MCL 767.29: "A prosecuting attorney shall not enter a *nolle prosequi* upon an indictment, or discontinue or abandon the indictment, without stating on the record the reasons for the discontinuance or abandonment and without the leave of the court having jurisdiction to try the offense charged, entered in its minutes."

The prosecutor explored the idea of entering a *nolle prosequi*, but did not follow through and actually request it. The prosecutor raised the issue because KE initially testified that Martin had not touched her inappropriately and without KE's allegations, there was no case. The attorneys and the court discussed the issue at length. This was not an unconstitutional interference with the prosecutorial function; MCL 767.29 requires leave of the court to enter a *nolle prosequi*. After a brief discussion, the prosecutor determined, and the trial court agreed, that a short recess would be held. The prosecutor was given ten minutes to talk to KE; he used only four. After reassuring KE, the prosecutor indicated that he was ready to proceed with the trial. Defense counsel pushed for dismissal, but the prosecutor had already taken it off the table. There was nothing to grant.

Martin contends that the trial judge pierced the veil of judicial impartiality and demonstrated his bias in favor of KE by suggesting or permitting the recess. This Court described the proper analysis for a claim that a court's conduct pierced the veil of judicial impartiality in *People v Willis*, 322 Mich App 579, 588; 914 NW2d 384 (2018):

> A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). In determining whether a trial judge's conduct deprives a defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 164, 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This is a fact-specific inquiry, and this Court considers the "cumulative effect" of any errors. *Id*. at 171-172. A single instance of

misconduct generally does not create an appearance that the trial judge is biased, unless the instance is "so egregious that it pierces the veil of impartiality." *Id*. at 171. In evaluating the totality of the circumstances, this Court should consider a "variety of factors," including

> the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

All discussion related to KE's discomfort and how to rectify it occurred outside the presence of the jury. Nothing was said to the jury when they were excused from the courtroom. When the jury returned to the courtroom, the court simply asked the prosecutor if he "would like to continue [his] direct examination at this time?" The jury had no idea that anything unusual had occurred during the recess. If the judge's tone and demeanor exhibited bias, it certainly could not be discerned from the record. There simply was no bias exhibited before the jury that could have impacted the outcome of Martin's trial.

## III. OTHER-ACTS EVIDENCE

Martin contends that the trial court improperly admitted the testimony of the three other-acts witnesses.[2] We review for an abuse of discretion a trial court's admission of challenged evidence. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). An abuse of discretion occurs when the court "chooses an outcome falling outside the range of principled outcomes." *Id*.

When a defendant is charged with committing CSC against a minor, MCL 768.27a(1) permits the admission of evidence that the defendant committed another such offense against a different minor. However, this evidence may "be excluded under MRE 403 if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *Watkins*, 491 Mich at 480. When faced with a challenge, a court should weigh several factors, including, but not limited to:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

---

[2] Martin also challenges the constitutionality of MCL 768.27a. His challenges have been repeatedly rejected. *People v Watkins*, 491 Mich 450; 818 NW2d 296 (2012); *People v Muniz*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 355977). We will not consider this issue further.

KE was five years old when Martin sexually abused her in her home with her parents nearby. Martin pulled down her pants while she lay on her bed and then digitally penetrated her vagina. Martin also performed oral sex upon KE while she lay on a towel on the bathroom floor.

MM described abuse very similar to KE's. MM is CM's daughter and Martin's step-granddaughter. In about 2011, when MM was five or six years old, she took a nap in Martin's bed while visiting his home. Martin came in, removed MM's pants, and digitally penetrated her vagina. MM ran out to her mother when Martin stopped, and they left the house. JH also described similar abuse, although she was older than KE at the time she was abused. JH was Martin's niece through marriage and was 14 when Martin assaulted her in 1994. She was asleep in a bed in Martin's home with other family members nearby when Martin digitally penetrated her vagina.

JM, Martin's daughter, described abuse very dissimilar to KE and the other witnesses. She described that over a decade, Martin made lewd comments to her, smacked her buttocks, forced her to watch sexual acts between Martin and his wife, and touched her vaginal area, but never penetrated her.

Although the sexual assaults were spread out over time, this does not weigh against admissibility in this case. Martin was a grown man and a father when all the acts occurred. Indeed, Martin was already a grandfather when he assaulted the latter three witnesses. This was not a case like *People v Hoskins*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 359103), where a prior CSC was committed when the defendant was a teenager and the victim a person near his own age.

In relation to the "infrequency of the other acts," MM and JH each described a one-and-done sexual assault. JM testified that Martin committed several sexual acts against her over several years. KE testified regarding two sexual assaults. Again, MM's and JH's testimony bears much closer similarity to KE's allegations than does JM's. Moreover, there were no intervening acts to weigh against admissibility.

Pointing to the witnesses' lack of credibility, Martin notes that the earlier acts had been reported to authorities, investigated, and no charges were brought or CPS allegations substantiated. Further, no one could corroborate the prior allegations, making it a solid credibility contest. There is no record indication that any of the witnesses were motivated to fabricate allegations against Martin. The question is one of credibility, not admissibility—"Witness credibility and the weight accorded to evidence is a question for the jury. . . ." *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). And "MCL 768.27a(1) permits evidence of crimes even though no conviction is obtained for those crimes." *People v Beck*, 510 Mich 1, 20 n 9; 987 NW2d 1 (2022). The jury could consider the lack of prosecution in assessing the credibility of the allegations, but the lack of prosecution does not weigh against admissibility.

Overall, the trial court erred in admitting JM's testimony regarding Martin's sexual abuse. Her allegations were fundamentally dissimilar to the allegations made by KE. MM's testimony was very similar to KE's and therefore properly admitted. JH's testimony falls somewhere in between and presents a closer question. Given the closeness of the issue, the trial court could, in its discretion, go in either direction. The court did not abuse its discretion in finding that evidence admissible.

Martin also challenges JM's other-acts testimony that he physically abused his son. MCL 768.27b provides for the admission of "evidence of the defendant's commission of other acts of domestic violence or sexual assault" when "the defendant is accused of an offense involving domestic violence or sexual assault." The evidence "is admissible for any purpose for which it is relevant, if it is not otherwise excluded under [MRE] 403." MCL 768.27b(1). However, the prosecution must provide advanced notice of the intent to use this evidence. MCL 768.27b(2).

MRE 404(b)(1) provides for the admission of other-acts evidence as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Notice must also be provided under the rule of evidence. MRE 404(b)(2).

The prosecution provided no notice that JM would testify about Martin's physical abuse of another child. Evidence of the physical abuse of a male child bears no relevance to the charges at issue—the sexual abuse of a granddaughter. It also bears no relevance to the testimony of the other-acts witnesses, all regarding sexual abuse of young female relatives. This evidence was inadmissible and defense counsel should have objected.

The improper admission of JM's testimony does not warrant a new trial, however. Relief is not warranted when the presentation of inadmissible evidence is harmless. See *People v Denson*, 500 Mich 385, 409-410; 902 NW2d 306 (2017). Similarly, a defendant who received ineffective assistance of counsel must establish prejudice as a result of counsel's errors. *People v Solmonson*, 261 Mich App 657, 663-664; 683 NW2d 761 (2004).

There remained two other-acts witnesses describing abuse similar to KE's, as well as KE's description of events. Koss testified that KE suffered from PTSD as a result of sexual abuse. Arnold testified that KE was exhibiting behavioral problems and disclosed sexual abuse at Martin's hands. Sefernick also testified that KE made disclosures related to "sexual trauma." Although CM testified for the defense, he admitted that the trial had been emotionally difficult for KE. And the officer who questioned Martin testified regarding his bizarre response to KE's accusations—Martin was "almost 100 percent positive" that he had not abused KE. The strength of the prosecution's other evidence makes it unlikely that the admission of JM's testimony was outcome determinative.[3]

---

[3] Martin also contends that the cumulative effect of the errors denied him a fair trial. See *People v Allen*, 331 Mich App 587, 611; 953 NW2d 460 (2020). The admission of JM's testimony was the only error in Martin's trial. And as noted, that error was ultimately harmless.

## IV. MRE 803(4) EVIDENCE

Martin challenges the admission over his objection of testimony from Koss about KE's statements during therapy. "We review the trial court's decision to admit evidence for an abuse of discretion. But we review de novo preliminary questions of law regarding whether a statute or evidentiary rule applies." *People v Duenaz*, 306 Mich App 85, 94; 854 NW2d 531 (2014).

MRE 803(4) provides that certain statements "are not excluded by the hearsay rule, even though the declarant is available as a witness": "Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." As explained by this Court in *Duenaz*, 306 Mich App 95-96:

> All exceptions to the hearsay rule are justified because of the belief that the statements are made under circumstances in which they are both necessary and inherently trustworthy. *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). The "rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *Id*. In cases of suspected child abuse, statements the child makes may be admitted under this exception when the totality of circumstances surrounding the statements supports that they are trustworthy. *Id*. at 323-324. Factors that may be part of a trustworthiness analysis include:
>
>> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Id*. at 324-325 (citations omitted).]

The Michigan Supreme Court has also noted that statements made to a psychologist rather than a physician "may be less reliable." *People v LaLone*, 432 Mich 103, 113-114; 437 NW2d 611 (1989).

KE was eight years old when she met with Koss. Koss did not describe "the manner in which the statements [were] elicited." Koss paraphrased KE's statements to her, but did not describe the actual manner in which KE phrased her statements or whether she used age-

appropriate terminology. The meetings between Koss and KE were initiated by KE's mother at the recommendation of KE's pediatrician because "there had been some sexual abuse and . . . they were seeking services to see if [KE] had any continued . . . behavioral complications or concerns . . . ." Koss's last meeting with KE was one week before the trial. The challenged statements include Koss recounting that KE was afraid Martin would escape from jail and come to her in the middle of the night and had nightmares that her stuffed animals performed sexual acts against her. Koss used these statements, as well as other information, to diagnose KE with PTSD. There was no chance that KE misidentified Martin given their relationship. Moreover, there was no evidence that KE had a motive to fabricate her statements.

As the statements were made for the purpose of medical treatment or diagnosis and were not sought out by the prosecutor or elicited for the purpose of gathering evidence for trial, the statements fall within the hearsay exception of MRE 803(4), even though they are arguably less reliable than if the statement had been made to a medical doctor. The court did not err in admitting this evidence.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Michelle M. Rick